**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CINDY ADAM, *individually and on behalf of all others similarity situated*, <br><br> Plaintiff, <br><br> v. <br><br> FRANK V. BARONE *et al.*, <br><br> Defendants. | Civil Action No. 20-10321 (MAS) (JBD) <br><br> **MEMORANDUM OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Defendants Frank V. Barone ("Barone"), Kirill Chumenko ("Chumenko"), Green Pogo LLC (Delaware) ("Green Pogo Delaware"), Green Pogo LLC (New Jersey) ("Green Pogo New Jersey"), Natural Beauty Line LLC ("Natural Beauty"), Vegan Beauty LLC ("Vegan Beauty"), Improved Nutraceuticals LLC ("Improved Nutraceuticals"), Fortera Nutra Solutions LLC ("Fortera"), and Advanced Beauty LLC's ("Advanced Beauty") (collectively, "Defendants") Motion to Dismiss or in the Alternative for a More Definite Statement and to Strike Certain Allegations in Plaintiff Cindy Adam's ("Plaintiff") First Amended Complaint (ECF No. 33). (ECF No. 88.) Plaintiff opposed (ECF No. 90), and Defendants replied (ECF No. 95). The Court has carefully reviewed the parties' submissions and decides the matter without oral argument under Local Civil Rule 78.1. For the reasons below, the Court grants in part and denies in part Defendants' Motion.

I.    **BACKGROUND**[1]

This is a putative class action concerning an alleged fraudulent scheme in which the Defendants advertised beauty products as "free samples" but then later charged consumers a subscription fee for the items. (*See generally* First Amended Complaint ("FAC"), ECF No. 33.) Plaintiff alleges that in August 2017, she saw an advertisement for free samples of beauty products called "Nuvega Lash." (*Id.* ¶ 42.) The advertisement claimed the products were endorsed by a celebrity named Blac Chyna, although Blac Chyna has never actually endorsed Nuvega Lash. (*Id.* ¶¶ 42, 44.) Plaintiff clicked on the advertisement, which brought her to a website (allegedly owned and operated by Fortera) featuring five-star reviews of Nuvega Lash. (*Id.* ¶¶ 43, 56.) Plaintiff purchased two "free samples" from that website, as well as a third item that cost $15, and these three items were shipped to Plaintiff. (*Id.* ¶ 45.) Her credit card was charged three times that same day by three seemingly separate merchant accounts. (*Id.* ¶¶ 46, 118.)[2]

A few weeks later, Plaintiff's credit card was charged $92.94, described as: "Recurring Card Purchase 09/07 Nuveganlashes 800-771-6369 NJ." (*Id.* ¶ 48.)[3] This charge was temporarily reversed by Plaintiff's bank until the bank investigated the charge and ultimately reinstated it. (*Id.* ¶¶ 49-50.) Plaintiff alleges that one or more of the Defendants falsely informed her bank that Plaintiff agreed to this subscription charge and made such statement to defraud Plaintiff and her

---

[1] The parties are familiar with the factual and procedural history of this matter so the Court recites only those facts necessary to resolve the instant Motion.

[2] The charges were as follows: (1) $4.99 described as "08/23 Advancedlash8007848531 800-8748531 NJ;" (2) $4.95 described as "08/22 Nuveganlashes 800-771-6369 NJ"; and (3) $14.99 described as "08/22 Nuveganbrows 800-577-7806 NJ." (*Id.* ¶ 46.)

[3] Because the charge was unexpected, Adam had insufficient funds and incurred a fee from her bank of $34.00. (*Id.*) The FAC also alleges that two days earlier, Plaintiff's credit card was charged $94.97 with a charge described as "09/06 Advancedlash8007848531 800-8748531 NJ," but this charge was ultimately reversed. (*Id.* ¶ 47.)

2

bank. (*Id.* ¶ 50.) Plaintiff contacted Nuvega Lash directly and was informed by a representative that when Plaintiff purchased the products, she agreed to pay the subscription cost if she kept the "free samples." (*Id.* ¶ 54.) The representative offered Plaintiff a refund if she returned the products, but Plaintiff refused this offer because she "did not trust the company which had just fraudulently charged her credit card without consent." (*Id.*)

The FAC's remaining allegations assert Defendants operated a fraudulent scheme as outlined below. The advertisements (such as the one Plaintiff viewed) funnel consumers to "hidden landing pages" that are inaccessible or deleted after a short time to avoid detection. (*Id.* ¶¶ 63-64.) On these hidden landing pages where consumers purchase Defendants' products, there are fake product reviews and misrepresentations about limited availability to induce consumers to purchase the advertised products, and there is no disclosure to customers that they are agreeing to a subscription because the terms are either buried or hidden. (*See id.* ¶¶ 10, 70, 72, 79, 84-86.) Further, Defendants run "false front" websites on which the subscription disclosures are clear and prominent. (*Id.* ¶¶ 97-116.) The operation of the "false front" websites makes it more difficult for banks to identify Nuvega Lash's operation as a fraudulent scheme because these websites—as opposed to the hidden landing pages that expire after a short period of time—are presented to customers' banks whenever a chargeback is investigated. (*Id.* ¶¶ 101, 116.) One of these "false front" websites was shown to Plaintiff's bank to demonstrate that she agreed to a recurring subscription. (*See id.* ¶ 288.) The FAC alleges some of these "false front" websites were operated by Natural Beauty at Chumenko's home address in New Jersey and were registered by an employee of Fortera. (*Id.* ¶¶ 104, 107-08.) Other "false front" websites used to deceive banks were operated by Green Pogo New Jersey and Improved Nutraceuticals at Barone's home address in New Jersey. (*Id.* ¶¶ 105-06.)

In addition to operating "false front" websites, Plaintiff alleges that the Defendant "shell corporations" also rotated their merchant accounts among Nuvega Lash customers using a "load balancer" software. (*Id.* ¶ 57.) When a consumer was billed for Nuvega products, the software selected a merchant account from among the defendant corporations depending on the current level of chargebacks associated with the account. (*Id.*) This prevented detection of the fraud by spreading chargebacks among different accounts and limiting the chargebacks associated with each account. (*Id.*)

In response to this alleged scheme, Plaintiff filed a putative class-action suit alleging the following causes of action: (1) violation of California's Consumer Legal Remedies Act; (2) violation of California's False Advertising Law; (3) violation of the unfair and fraudulent prongs of California's Unfair Competition Law; (4) violation of the unlawful prong of California's Unfair Competition Law; (5) violation of California's Automatic Renewal Law; (6) violation of the Electronic Fund Transfer Act; (7) civil Racketeer Influenced and Corrupt Organizations Act (RICO); (8) violation of various state consumer protection laws; (9) aiding and abetting; and (10) conspiracy. (*See generally id.*)

## II.   LEGAL STANDARD

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002).[4] "To survive a motion to

---

[4] Hereinafter, all references to a "Rule" or "Rules" refer to the Federal Rules of Civil Procedure.

dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). Importantly, on a Rule 12(b)(6) motion to dismiss, "[t]he defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

A complaint must set forth "a short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), which gives the defendant "'fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The complaint must contain "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" *Warren Gen. Hosp. v. Amgen Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (quoting *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009)). In the end, a court will grant a motion to dismiss brought under Rule 12(b)(6) if the factual allegations in the complaint are insufficient "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

When a plaintiff pleads a fraud claim, the plaintiff "must meet a heightened pleading standard under [Rule] 9(b)." *Zuniga v. Am. Home Mortg.*, No. 14-2973, 2016 WL 6647932, at *2 (D.N.J. Nov. 8, 2016). "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "A plaintiff alleging fraud must therefore support its allegations 'with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue.'" *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

### III. DISCUSSION

Defendants move to dismiss Plaintiff's FAC on three grounds: (1) insufficient evidence to hold Defendants Barone and Chumenko individually liable; (2) failure to state a claim based on improper pleading; and (3) lack of standing and improper pleading to assert a nationwide class action. The Court addresses each argument in turn.

#### A. Dismissal of Defendants Barone and Chumenko

Defendants argue that Barone and Chumenko are subject to dismissal because Plaintiff fails to allege sufficient facts to pierce the corporate veil and hold Barone and Chumenko individually liable for the acts of their companies. (Defs.' Moving Br. 17-18, ECF No. 88-1.) Plaintiff argues that Barone and Chumenko are legally responsible for their own actions because a "corporate officer is individually liable for the torts he personally commits and cannot shield himself behind a corporation when he is an actual participant in the tort." (Pl.'s Opp'n Br. 17, ECF No. 90 (quoting *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978).)

It is well settled law in this Circuit that a corporate officer can be held individually liable for his or her intentional torts without the need to pierce the corporate veil. *See J&J Sports Prods., Inc. v. CSG Props., LLC*, No. 18-8836, 2019 WL 1439903, at *4 (D.N.J. Mar. 31, 2019) (noting that a corporate officer can be held individually liable without piercing the corporate veil); *U.S. ex rel. Haskins v. Omega Inst., Inc.*, 11 F. Supp. 2d 555 (D.N.J. 1998) (allowing fraud claim against corporate officers); *Sunset Fin. Res., Inc. v. Redevelopment Grp. V, LLC*, No. 05-2914, 2006 WL 3675384, at *3-6 (D.N.J. Dec.12, 2006) (denying defendants' motion to strike individual owner as defendant and holding that owner could be held personally liable for tortious conduct). "[I]t is axiomatic at a basic, common-sense level . . . that a wrongdoer cannot receive a free pass on liability for intentional misconduct simply by claiming to be immunized by the corporate shield."

*Haskins*, 11 F. Supp. 2d at 565. But to sustain individual liability, plaintiffs still must plead independent facts "beyond bare allegations." *J&J Sports Prods.*, 2019 WL 1439903, at *4-5 (finding plaintiff failed to plead independent facts to sustain individual tortious conduct); *see Donsco*, 587 F.2d at 606 (finding defendant's own testimony that his duties as president of a corporation, including "arrangements of marketing services" and "distribution for the banks," demonstrated actual participation in the wrongful acts). A plaintiff must plead facts sufficient to show that the corporate officer was "sufficiently involved in the commission of the tort." *J&J Sports Prods.*, 2019 WL 1439903, at *4 (quoting *Reliance Ins. Co. v. The Lott Grp.*, 851 A.2d 766, 777 (N.J. Super. Ct. App. Div. 2004)).

Here, the Court finds the FAC does not allege facts demonstrating that Barone and Chumenko were sufficiently involved in the commission of the fraud. For example, Plaintiff's allegations that Barone and Chumenko admitted they are principals of the relevant companies and that their home addresses appear on the companies' websites do not sufficiently demonstrate tortious conduct. (FAC ¶¶ 16, 60, 101; *see J&J Sports Prods.*, 2019 WL 1439903, at *4-5 (finding conclusory allegations based solely on a defendant's status as an officer and member of the defendant-corporation, combined with "bare" allegations that the defendant directed the alleged tortious conduct, was not enough to adequately allege individual liability).) Additionally, conclusory assertions that Barone and Chumenko were active participants in fraudulent schemes or were "directly involved in the management and operation" of their companies do not contain the requisite specificity to sustain Plaintiff's assertion of individual tortious conduct. (*Id.* ¶¶ 60,

171, 176, 208; *see J&J Sports Prods.*, 2019 WL 1439903, at *4-5.)[5] The Court will, accordingly, grant Defendant's Motion to Dismiss as to individual Defendants Barone and Chumenko.[6]

**B.     Rule 9(b)**[7]

Next, Defendants contend that all the counts in the FAC sound in fraud and are thus subject to the heightened pleading standard required under Rule 9(b). (Defs.' Moving Br. 14.) Defendants urge the Court to dismiss the FAC's fraud-based claims as deficient under this standard. (*Id.*) They argue, for example, that "[Plaintiff] merely pled collective allegations against all Defendants without stating 'with particularity the circumstances' of each individual Defendant's alleged fraudulent conduct." (*Id.* (emphasis omitted).) The Court disagrees and concludes that the FAC satisfies Rule 9(b).

Under Rule 9(b), plaintiffs must buttress their allegations with "the essential factual background that would accompany 'the first paragraph of any newspaper story'—that is, the 'who,

---

[5] Defendants also argue that Plaintiff only offers "conclusory statements support[ing] piercing the corporate veil in contravention of [N.J. Stat. Ann.] § 42:2C-30." (Defs.' Reply Br. 12, ECF No. 95.) Factors to be considered in determining whether to pierce the corporate veil include: (1) gross under capitalization; (2) failure to observe corporate formalities; (3) non-payment of dividends; (4) the insolvency of the debtor corporation at the time; (5) siphoning of funds of the corporation by the dominant stockholder; (6) non-functioning of other officers or directors; (7) absence of corporate records; and (8) the fact that the corporation is merely a facade for the operations of the dominant stockholder(s). *See Bd. of Trs. of Teamsters Loc. 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 172 (3d Cir. 2002) (citing *Craig v. Lake Asbestos of Quebec, Ltd.*, 843 F.2d 145, 149 (3d Cir. 1988)). The Court acknowledges that Plaintiff pleads facts demonstrating Defendants do not follow corporate formalities—such as Defendants' sharing of merchant accounts, CRM software, and websites—but the Court does not conduct a piercing the corporate veil analysis because Plaintiff did not brief the issue or provide further facts alleging additional piercing of the veil factors. (*See* Pl.'s Opp'n Br. 21.)

[6] Plaintiff also addresses pleadings from outside litigation involving Defendants Barone and Chumenko, but the Court does not consider these cases in the instant Motion. (FAC ¶ 178; Pl.'s Opp'n Br. 1.)

[7] From this point forward, the Court refers to the corporate defendants only and not Defendants Barone and Chumenko unless otherwise expressly noted.

8

what, when, where and how' of the events at issue." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1422 (3d Cir. 1997)). Although Rule 9(b) calls for stringent pleading, it does not demand unrealistically precise pleading about each and every fraudulent statement. Indeed, "[d]etails about the timing, context and content of the allegedly false statements must be identified in discovery, but they are not within the ambit of Rule 9(b)." *Diversified Indus., Inc. v. Vinyl Trends, Inc.*, No. 13-6194, 2014 WL 1767471, at *4 n.6 (D.N.J. May 1, 2014).

The FAC meets the Rule 9(b) requirements. Starting with the "what," Plaintiff provides multiple examples of the misrepresentations and omissions present in the alleged scheme to induce consumers to purchase Defendants' products. Specifically, the FAC highlights Nuvega Lash advertisements quoting or claiming endorsement by numerous celebrities that have not in fact endorsed the products (FAC ¶¶ 42, 44, 65-69, 142-43), false claims about a limited supply of Nuvega Lash products remaining (*id.* ¶¶ 70, 72, 84-86, 151-53), false five-star reviews of the Nuvega Lash products (*id.* ¶¶ 43, 72), and demonstrations that the products were advertised as "free" when in fact consumers were charged for the full price of the products and signed up for a monthly subscription (*id.* ¶¶ 10, 69, 71, 141, 144-49). Adding to the "what," the FAC provides specific examples where Defendants failed to display appropriate terms and conditions provisions to consumers prior to product purchases. (*Id.* ¶¶ 77 ("If a user visits [a purchasing landing page] on mobile or a tablet . . . the website is programmed so that [the subscription] disclaimer is not visible at all."), 81 (noting there is no requirement that users click a box or take any other action to agree to any terms of service), 93 (showing an example of the subscription disclosure on a checkout page that is presented in small text, written in a light grey font, and set against a white background.).)

9

The FAC also answers the "when" and where," alleging that on or around August 24, 2017, Defendants made false or misleading statements when Plaintiff viewed the Nuvega Lash advertisements online and purchased the products. (*Id.* ¶¶ 42-45.) Plaintiff alleges that since at least mid-2017, Defendants registered the websites containing misleading endorsements and terms and conditions for Nuvega Lash, and circulated advertisements online for the products through social media and other webpages. (*See id.* ¶¶ 42, 123.) Further, Plaintiff alleges that her experience with Nuvega Lash was part of a pattern of related transactions with other customers that began no later than January 2017. (*Id.* ¶ 183.) She provides several representative examples of customers describing similar experiences with Nuvega Lash products in Better Business Bureau complaints, and alleges these experiences comprise the same purpose, structure, and participants, and were all done in furtherance of the same scheme to defraud consumers. (*See id.* ¶¶ 116-41.)

The "how" is even more detailed. The FAC alleges that Plaintiff saw the Nuvega Lash product advertisement and completed her order for a "free trial" in reliance on statements contained in and omissions from the advertisements and on the purchasing landing pages. (*Id.* ¶¶ 42-45, 53-54, 57.) Further, the FAC alleges that the failure to disclose to customers that they are viewing a different website ("hidden landing pages") than the one that would be shown to their financial institution ("false fronts") should they seek a chargeback or investigation is misleading and deceptive to a reasonable consumer. (*See id.* ¶¶ 64-67, 73, 82, 101, 146-49, 156-59.) Additionally, Plaintiff details the use of different placement and appearance of purchase terms and conditions between the hidden landing pages and false front websites. (*See id.* ¶¶ 75-81, 93-99, 114-16.) And she also describes the mechanism through which Defendants avoided fraud detection; the Defendants rotated their merchant accounts using a "load balancer" software dependent upon the current level of chargebacks associated with each account. (*Id.* ¶ 57.)

Finally, in addressing the "who," the FAC contains separate factual allegations specific to each individual Defendant and Defendants' involvement or participation in the misleading and deceptive advertising scheme. (*See, e.g., id.* ¶¶ 19, 58, 104, 107-08, 179, 196-97 (citing allegations against Natural Beauty); *id.* ¶¶ 21, 106, 174, 192, 194, 198 (citing allegations against Improved Nutraceuticals); *id.* ¶¶ 22, 56, 60, 104, 107, 170, 175, 188-94, 423, 428 (citing allegations against Fortera); *id.* ¶¶ 23, 59, 172, 195 (citing allegations against Advanced Beauty); *id.* ¶¶ 18, 105, 175 (citing allegations against Green Pogo New Jersey); *id.* ¶ 17 (citing allegations against Green Pogo Delaware.).)

Moreover, courts have allowed group pleading in cases dealing with "an alleged fraudulent concealment perpetrated by sophisticated corporate entities that are related to each other" and where plaintiffs assert common acts perpetrated by multiple defendants. *Gray v. BMW of N. Am., LLC*, No. 13-3417, 2014 WL 4723161, at *3 (D.N.J. Sept. 23, 2014) (finding plaintiffs did not have to distinguish the specific roles that each defendant-entity played in a sophisticated fraudulent concealment scheme in order to meet the Rule 9(b) standard because "those facts are within the defendants' knowledge and are properly to be determined through discovery, not on a motion to dismiss"); *In re Riddell Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 431-32 (D.N.J. 2015) (finding group pleading was sufficient where defendants all acted together under a common brand, there was common ownership of the companies involved, and the companies were represented by the same counsel, accepted service as a single entity, and were all joined in the instant motion to dismiss).

Here, all Defendant companies are alleged to have had the same general role: creating "false fronts" and signing up for merchant accounts to be plugged into a load balancer to evenly distribute chargebacks and other signs of fraud. Like the defendants in *Riddell*, the Defendants

11

here are alleged to have acted together under a common brand (Nuvega Lash), are under common ownership (Barone and Chumenko), and are represented by the same counsel and joined in the instant motion. (Pl.'s Opp'n Br. 13-15.)

Taken together, these allegations are enough to satisfy Rule 9(b)'s pleading requirements.[8]

### C. Class Action Standing for Nationwide Class

Defendants next argue that the FAC fails to support a nationwide class claim. (Defs.' Moving Br. 21-23.) The FAC brings claims under various states' consumer protection statutes, alleging that Defendants "engaged in deceptive acts and unfair practices" that caused actual damages to a nationwide consumer class. (FAC ¶¶ 435-36, 444.) Defendants move to dismiss Plaintiff's class allegations based on lack of standing and improper pleading. (Defs.' Moving Br. 21-23.) Specifically, Defendants argue that Plaintiff, a California resident, does not have standing to pursue claims on behalf of out-of-state residents under another state's consumer protection laws and that Plaintiff fails to plead the particulars of each and every one of the identified state consumer

---

[8] The Court also rejects Defendants' "group pleading" and "shotgun pleading" arguments under Rule 8(a). (*See* Defs.' Moving Br. 8-13.) The Court finds that the FAC provides Defendants with fair notice of the claims asserted against them and the grounds upon which those claims rest. *See In re Insulin Pricing Litig.*, No. 17-699, 2021 WL 5980629, at *15 n.14 (D.N.J. Dec. 17, 2021) (rejecting defendants' assertion that a 300-page complaint outlining an alleged scheme to defraud and conspiracy to inflate prices was an improper "shotgun" pleading because pleadings provided proper notice to defendants). Accordingly, the Court also rejects Defendants' Motion for a More Definite Statement under Rule 12(e) and Motion to Strike Certain Allegations under Rule 12(f). *See, e.g., Discover Bank v. Greenwood House Home for the Jewish Aged*, No. 18-16020, 2020 WL 2839462, at *4 (D.N.J. May 29, 2020) (quoting *Natreon, Inc. v. Ixoreal Biomed, Inc.*, No. 16-4735, 2017 WL 3131975, at *4-5 (D.N.J. July 21, 2017) ("Motions to strike are 'highly disfavored' and 'will generally be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'"); *Agostino v. Quest Diagnostics, Inc.*, No. 4-4362, 2005 WL 8179912, at *10 (D.N.J. Oct. 6, 2005) (quoting *Briley v. City of Trenton*, 164 F.R.D 26, 30 (D.N.J. 1995) ("Rule 12(e) motions are 'limited to remedying unintelligible, rather than insufficiently detailed, pleadings.'").

protection laws. (*Id.*) Plaintiff argues that nationwide class issues should be decided at class certification. (Pl.'s Opp'n Br. 22-25.) The Court agrees with Plaintiff.

The Court deems the inquiry of standing to pursue claims on behalf of absent class members of the nationwide class premature and more appropriate for the class certification stage. The Court agrees with the rationale of one contingent of courts that "the fact that the named [p]laintiffs may not have individual standing to allege violations of consumer protection laws in states other than those in which they [were injured] is immaterial" because "[t]he issue . . . is one of predominance–whether 'questions of law or fact common to class members predominate over any questions affecting only individual members.'" *Ramirez v. STI Prepaid LLC*, 644 F. Supp. 2d 496, 505 (D.N.J. 2009) (citing Fed. R. Civ. P. 23 (b)(3)); *In re Liquid Aluminum Sulfate Antitrust Litig.*, No. 16-2687, 2017 WL 3131977, at *19 (D.N.J. July 20, 2017) (rejecting a motion to dismiss a nationwide state-law class and deferring standing questions until class certification); *see also Durso v. Samsung Elecs. Am., Inc.*, No. 12-5352, 2013 WL 5947005 at *13 (D.N.J. Nov. 6, 2013) ("Dismissal of class claims prior to discovery and a motion to certify the class by plaintiff is the exception rather than the rule.").

Here, the Court finds that whether to certify a nationwide class is a predominance issue to be decided at the class certification stage and not a threshold standing issue. Similarly, the Court finds that any differences in the state consumer protection laws can be addressed at the class certification stage. *See In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 148 F.3d 283, 315 (3d Cir. 1998) (finding courts have certified nationwide classes where various states' laws could be grouped by shared elements—despite minor differences in state law—and applied as a unit in such a way that litigation is manageable); *see In re FieldTurf Artificial Turf Mktg. & Sales Practices Litig.*, No. 17-2779, 2018 WL 4188459, at *7-8 (D.N.J. Aug. 31, 2018) (finding

dismissal of plaintiffs' nationwide class claim of breach of various states' consumer protection statutes would be premature at motion to dismiss stage); *see Agostino*, 2005 WL 8179912, at *9 (denying dismissal of plaintiffs' similar consumer protection laws of other states at motion to dismiss stage). At this stage of litigation, no class has been certified, and the Court, therefore, finds that to determine whether Plaintiff alleged each element of every state consumer protection law is premature. Defendants' Motion to Dismiss Plaintiff's claims brought on behalf of a nationwide class is, accordingly, denied.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is granted in part and denied in part. An appropriate order will follow.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE